Action dismissed. Judgment will be entered accordingly.

(C.D. 4833)

LOFFREDO BROS., INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 76-8-01789

(Dated December 18, 1979)

*Barnes, Richardson & Colburn* (*Jacqueline Nolan-Haley* on the briefs) for the plaintiff.

*Alice Daniel*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, Field Office for Customs Litigation (*Susan C. Cassell* on the brief), for the defendant.

MALETZ, Judge: This case which comes before the court on cross-motions for summary judgment involves the proper tariff classification of Communion pins imported from Italy in 1974 via the Port of New York. The pins were classified by the Government under item 740.38 of the Tariff Schedules of the United States, as modified by T.D. 68–9, as other jewelry and other objects of personal adornment valued over 20 cents per dozen pieces or parts and assessed duty at the rate of 27.5 percent ad valorem. Plaintiff claims that the pins are properly dutiable at the rate of 10 percent ad valorem under item 740.60, as modified by T.D. 68–9, as other religious articles of a purely devotional character designed to be worn on apparel or carried on or about or attached to the person.

## The Statutes

The statutes involved are contained in schedule 7, part 6, subpart A of the tariff schedules. They are as follows:

*Subpart A headnotes:*
    *     *     *     *     *     *     *
    2. For the purposes of this subpart—
            (a) the term "jewelry and other objects of personal adornment" * * * does not include—
        *     *     *     *     *     *     *

(ii) religious articles of a purely devotional character * * *

*Classified under:*

Jewelry and other objects of personal adornment not provided for in the foregoing provisions of this part (except articles excluded by headnote 3 of this part), and parts thereof:

    *     *˙     *     *     *     *     *

Valued over 20 cents per dozen pieces or parts:

    *     *     *     *     *     *     *

| | | |
|---|---|---|
| 740.38 | Other | 27.5% ad val. |

*Claimed under:*

Religious articles of a purely devotional character designed to be worn on apparel or carried on or about or attached to the person:

    *     *     *     *     *     *     *

Crucifixes and medals:

    *     *     *     *     *     *     *

| | | |
|---|---|---|
| 740.60 | Other | 10% ad val. |

At the outset, the parties agree that no material issue of fact exists which need be resolved by trial. Instead, the parties agree that the case may be determined on the basis of the record before the court.

Against this background, plaintiff in support of its motion for summary judgment has submitted the affidavit of Frank Loffredo, the president of the plaintiff-importer, Loffredo Bros., Inc.; the affidavit of Msgr. Harry J. Byrne, pastor of St. Joseph's Church in New York City, N.Y.; copies of several pages from catalogs of companies selling religious articles; and representative samples of the imported merchandise.

Defendant in support of its cross-motion for summary judgment has submitted the affidavit of Father James O'Connor, a Roman Catholic priest who is professor of dogmatic theology at St. Joseph's Seminary in Yonkers, N.Y., and the deposition of Msgr. Harry J. Byrne, whose affidavit, as previously indicated, was submitted by plaintiff.

Considering first the imported merchandise, it consists of two golden-colored Communion pins: Style No. 671 (pin No. 1) which is one-half inch long; and style No. 672 (pin No. 2) which is 1 inch long. These pins are described by Msgr. Byrne in his deposition as follows (pp. 9–11):

> The pin marked No. 1 represents a chalice, which is an article that is used in the Mass, the chief service in the Catholic Church, and from the top of the chalice is a round semicircle, which is

obviously representing the Host, which is received in the Mass and in Holy Communion.

The part that represents the Host has the letters IHS on it. These are representations of three Greek letters that indicate the name of Jesus.

There's also another symbolism in these initials from the Latin and they refer to the phrase "in hoc signum," meaning "in this sign."

It appears frequently on a cross or on vestments that are used at the Mass and it refers to the cross as a sign of Christian belief, and in this case, the Host, the Communion Host, is a sign of Christian belief.

\*  \*  \*  \*  \*  \*  \*

The pin marked No. 2 is very similar to the first pin that I described. The pin marked No. 2 is also representative of a chalice, the article used in the Mass, and above the chalice appears a circle, which obviously represents the Host received in the Mass and received at Communion.

At the base of the chalice is the word "sanctus," which is the Latin for "holy." Above that word is a cross.

On the upper part of the chalice, there is a representation of an angel. On the part representing the Host, there is also a cross.

With regard to these imported Communion pins, it is undisputed:

1. That plaintiff sells the imported pins only to religious article stores.

2. That the pins are advertised only in religious article catalogs and only in connection with the celebration of First Holy Communion.

3. That the pins symbolize the Holy Eucharist, one of the seven sacraments of the Roman Catholic Church.

4. That the pins are given to children on the occasion of their First Holy Communion.

5. That the First Holy Communion is given to a child who has reached a level of religious maturity so that he can henceforth receive the Sacrament of the Holy Eucharist.

In this setting, the single issue is whether the imported Communion pins are "purely devotional" within the meaning of item 740.60.

On this issue we have the affidavit (presented by plaintiff) and the deposition (taken by the defendant) of Monsignor Byrne who was ordained as a Roman Catholic priest 33 years ago and is presently pastor of St. Joseph's Church in New York. He has been a monsignor—a title of honor signifying membership in the papal household—for the past 17 years. Monsignor Byrne attended Cathedral College, St. Joseph's Seminary in Yonkers and Catholic University of America, from which school he holds a doctorate in canon law. He has also held administrative positions in the New York Archdiocese.

In his affidavit, Monsignor Byrne stated that the pins have special religious significance, representing the Holy Eucharist; that their purpose is to excite pious devotion; and that they are worn as acts of devotion. Further, Monsignor Byrne testified in the course of his

deposition that he considered the Communion pins to be purely devotional because they would not be worn on an occasion that was not associated in some way to the reception of the First Holy Communion. He added that a child would be inclined to wear a Communion pin to church on Sunday or when going to school for a period of a few months after receiving First Holy Communion.

With respect to the use of the Communion pins, Monsignor Byrne testified as follows (dep. pp. 13–14):

*Q.* After the Communion ceremony, are you familiar with what happens to the pins after this particular ceremony? How they are used, if they are used?

A. Yes. These pins would be worn by the children for a period of time, maybe some months after the ceremony, and then they would generally be kept with the family heirlooms. A certificate indicating that the child had received First Holy Communion on such and such a date, perhaps the armband, the ribbon that they wear on the occasion, and generally that kind of a pin would be kept by a family in a box with sort of their memorabilia from childhood.

I might also add that sometimes decorative certificates are given which the families frequently frame and place in the child's room or somewhere in the house and frequently the pin will be attached to that decorative certificate.

*Q.* Would you agree that these pins are commemorative in nature, to commemorate the date or the time that the child made their First Holy Communion?

A. Yes, I would agree that the pins are commemorative in nature.

I would add that they are more than that, in that they are a religious article that tends to inspire devotion or prayer on the part of the child who receives it.

*Q.* Might they also be more than a religious article in that they tend to, as well as inspiring devotion, commemorate the happening of a particularly significant event?

A. Yes.

Further, Monsignor Byrne testified that in his opinion the imported Communion pins were "purely devotional" (dep. p. 20) within the following definition of that term (dep. p. 36):

I think something would be purely devotional that would have a primary quality of religious significance.

It would be something that would move a believer to prayer, to meditative reflection on the mysteries of life, of creation, of where we're going, the religious dimensions of our lives.

It would be something that would be used primarily on religious occasions.

Defendant, in addition, submitted the affidavit of Father James O'Connor, a Roman Catholic priest for the past 13 years. Father O'Connor was a parish priest at a church in the Bronx, N.Y., from 1966 to 1969. In 1969, he went to Rome where he received a degree as doctor of theology from the University of St. Thomas in 1972. For

the past 8 years, Father O'Connor has been professor of dogmatic theology at St. Joseph's Seminary in Yonkers, N.Y.

In his affidavit, Father O'Connor, after indicating that he had examined the Communion pins in question, then stated:

> · 6. I am very familiar with pins of this nature and know that they are given to children on the occasion of their First Holy Communion, to be worn on the clothing.
>
> 7. It is my opinion that although Communion pins possess a certain religious significance, they are not of a purely devotional nature, that is, they are not used solely to connote pious thoughts and aspirations and to excite one's thoughts to heavenly things.
>
> 8. These Communion pins are unlike rosary beads and religious medals which are purely and directly devotional.
>
> 9. The primary purpose of the First Communion pins is to commemorate the occasion of the child's First Holy Communion and to symbolize that the child has reached a certain level of religious maturity and can henceforth receive the Sacrament of the Eucharist.

The record is thus clear that the Communion pins have both a religious and commemorative significance. Beyond that, Monsignor Byrne was of the opinion that their religious significance is primary (dep. p. 22), while Father O'Connor was of the opinion that their primary purpose is commemorative (aff. p. 2, par. 9). In light of these considerations, we must determine whether the imported Communion pins are of a "purely devotional nature" within the meaning of item 740.60.

The question of what constitutes an article of purely devotional character was considered in *Panation Trade Co.* v. *United States*, 62 Cust. Ct. 464, C.D. 3802, 298 F. Supp. 752 (1969). There, a medal symbolically depicting the Holy Trinity on one side and the risen Christ on the other side, was held to be a religious article of a purely devotional character under the provisions of item 740.60. In reaching that conclusion, the court noted that the term devotional "is a 'religious * * * word used to connote pious thoughts and aspirations' and to excite one's thoughts to heavenly things." As relevant in this regard, the court cited the following dictionary definitions of the words "purely" and "devotional" (62 Cust. Ct. at 469):

> *Funk & Wagnalls New "Standard" Dictionary of the English Language* (1956)—
>
>> *purely* adv. 1. In a pure manner. * * * (2) Completely; totally; absolutely * * * .
>>
>> *devotional* a. Of or pertaining to devotion; of the nature of or expressing devotion; devout.
>>
>> *devotional* n. 1. The state of being devoted. (1) Zealous application to any pursuit or practise, especially to religious duties; devoutness. (2) Strong attachment expressing itself in earnest service; ardor; zeal. * * * 2. An expression or act of devotedness or devoutness; especially an act of religious worship * * * .

> *Webster's Third New International Dictionary of the English Language* (1963)—
>> *purely* adv: without admixture—usually used in combination with an adjective * * *.
>> *devotional* adj: relating to, suited to, used in, or characterized by devotion (as religious devotion) * * *.

The court in *Panation* further noted that whether an article is one of religious devotion is determined largely by its nature and the subject with which it deals. 62 Cust. Ct. at 470. Tested by this standard, it must be concluded that although the subject matter of the Communion pins here involved has religious significance, the undisputed facts demonstrate that their nature and use are not purely devotional within the meaning of item 740.60.

On the contrary, it appears clear that the Communion pins at bar are commemorative in nature much in the manner of a graduation pin or ring. Thus, according to Monsignor Byrne's deposition, the pins are worn for a short period of time either to church or to school and then are usually put away in a box with other memorabilia from childhood such as the ribbon, armband, or stole worn on the occasion. Significant in this respect is the fact that sometimes the pins are attached to the decorative certificates issued to commemorate the First Holy Communion which are framed and displayed in the house. The short of the matter is that the pins are not of a purely devotional character but rather are "really a memento of the religious event." See Monsignor Byrne deposition page 30.

In view of all the foregoing, the court holds that the plaintiff has failed to sustain its burden of establishing that the imported Communion pins are of a "purely devotional character" within the meaning of item 740.60. Accordingly, plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted; and the action is hereby dismissed.